USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/13/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
DEDRA DE LA ROSA,                                 :
                                                  :
                               Plaintiff,         :
                                                  :        13-CV-696 (VEC)
          -against-                               :
                                                  :        MEMORANDUM
LEWIS FOODS OF 42ND STREET, LLC,                  :        OPINION & ORDER
                                                  :
                               Defendant.         :
------------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Dedra De La Rosa initiated this lawsuit against McDonald's Restaurants of New York, Inc., in January 2013, alleging, *inter alia*, that McDonald's Restaurants designed and constructed a restaurant that did not comply with the American with Disabilities Act ("ADA"), 42 U.S.C. § 12183(a). Compl. ¶ 45. De La Rosa has added and settled with a number of defendants, including McDonald's USA LLC; the sole remaining defendant, Lewis Foods of 42nd Street, LLC ("Lewis Foods"), currently operates the allegedly non-compliant McDonald's restaurant on 42nd Street in Manhattan. Lewis Foods moves to dismiss[1] De La Rosa's claims that pertain to noncompliant alterations that were made to the premises before Lewis Foods had any role at the restaurant. The parties dispute whether a previous owner's alteration of a property in violation of Section 12183(a)(2) constitutes a continuing violation of the ADA that runs with the property, requiring a subsequent tenant of the property to rectify the past violation, irrespective of when it occurred and whether such a project is, at this point, "readily

---

[1] Although Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court considers the motion as one for summary judgment under Federal Rule of Civil Procedure 56 because both parties filed and relied upon materials outside the pleadings. *See Parada v. Banco Industrial de Venez., C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).

achievable."[2] Based on the plain text of the statute, the Court concludes that it does not; accordingly, Defendant's motion is GRANTED.

## BACKGROUND[3]

Dedra De La Rosa is a New York City resident who suffers from medical conditions that leave her wheelchair-bound. Second Am. Compl. ("SAC") ¶¶ 5-6. She regularly travels to Times Square and patronizes the Times Square-based McDonald's restaurant. *Id.* ¶¶ 34-35, De La Rosa Dep. at 52-53. In fact, De La Rosa has visited the McDonald's "[o]ver 50 times," dating back to her childhood. De La Rosa Dep. at 52-53. In or around 2003, the restaurant was renovated; this renovation constituted an "alteration" within the meaning of the ADA. *See* Storipan Letter of Oct. 3, 2014, Dkt. 85. Among other changes made as part of the renovation, a mezzanine, which is accessible only via a stairway, and a raised area, which is also accessible only via stairs, were created. *See* Def. Mem. Ex. A, De La Rosa Dep. at 94, 115. Since the renovation, De La Rosa has continued to visit the McDonald's regularly, including in 2003 and 2004. De La Rosa Dep. at 94-95, 116. Although she has asked about access to the upper floors of the restaurant, De La Rosa has been informed that there is no way for her to access the second floor, the mezzanine, or the raised area. *Id.* at 94.[4]

---

[2]  The parties do not dispute that the removal of barriers when "readily achievable" under 42 U.S.C. § 12182 is a continuing obligation irrespective of when the particular architectural barrier was put in place.

[3]  For the purposes of this Motion, the "Court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Pandora Media, Inc. v. Am. Soc. of Composers, Authors and Publishers*, 785 F.3d 73, 77 (2d Cir. 2015) (*per curiam*) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)).

[4]  There is a second floor that is accessible via a freight elevator, but Plaintiff alleges that elevator is not open to the public. *See* Pl. Proposed Findings of Fact, Dkt. 111, ¶¶ 18-19. Even from the second floor, the raised area and the mezzanine are accessible only via stairs. *Id.* ¶¶26, 29-31.

Plaintiff, a frequent filer in this district,[5] initiated this lawsuit in January 2013. In February 2013, she filed an amended complaint naming Lewis Foods among the defendants in the action. Other defendants included the out-of-possession owners of the building and prior tenants, including McDonald's Restaurants of New York, Inc., Six Times Square Center Partners, L.P., Epic Candler LLC, and McDonald's USA, LLC; they have all been dismissed by various stipulations and amendments throughout this litigation. Lewis Foods, the current operator of the McDonald's restaurant, is the sole remaining defendant.

Lewis Foods has leased and operated the McDonald's pursuant to a Franchise Agreement since 2010. Def. Stip. of Facts, Dkt. 142, ¶ 2; *see also* Def. Mem. Ex. C. Pursuant to the Franchise Agreement, Lewis Foods is obligated to make necessary repairs and construction on the premises and "to comply with all federal, state, and local laws, ordinances, and regulations affecting the operation of the Restaurant." *Id.* ¶¶ 3-5. Lewis Foods has not "altered" the premises. *See* Lewis Dep. at 26.

## DISCUSSION

There are two unsettled legal questions that are potentially dispositive of this motion. First, is the current operator of a place of public accommodation liable for alterations that do not comply with the strictures of 42 U.S.C. § 12183(a)(2) that were made after 1992 but before the current operator owned, leased, or operated the premises?[6] Second, how does the statute of

---

[5] Defendant has pointed out, at various stages in this litigation, that De La Rosa is a plaintiff in dozens of cases in the Southern District of New York and that she is represented in all by attorneys at Parker Hanski LLC, who have hundreds of similar cases pending with a stable of regular plaintiffs. *See, e.g.*, Def. Motion to Exclude Evidence Related to Alleged Emotional Distress, Dkt. 114, at 2 n.1; *see generally* Mosi Secret, *Disabilities Act Prompts Flood of Suits Some Cite as Unfair*, N.Y. TIMES, Apr. 17, 2012, at A1. That fact does not affect the Court's analysis – it is by no means difficult to imagine that a wheelchair-bound New York City resident encounters illegal barriers to access at many places of public accommodation on a regular basis or that such a person would continue to use the attorney with whom she has a relationship when trying to make New York more accessible for all.

[6] For a thorough discussion of this issue, *see* M. Rene Potter, Comment, *The Americans with Disabilities Act: Who Pays for Loopholes in the ADA? A Look at the Responsibility of Successive Owners for Properties Built in Violation of the ADA*, 49 CAL. W. L. REV. 309 (Spring 2013).

limitations apply to a claim pursuant to 42 U.S.C. § 12183(a)(2)? The plain language of the statute leads the Court to conclude that a current operator of a premises is not liable for a predecessor's failure to make alterations in accordance with the specifications of Section 12183(a)(2). Even if Defendant could be liable, Plaintiff's claim would be time-barred. Accordingly, Defendant's motion to dismiss Plaintiff's alterations claim is granted.

## I.  Successor Liability

As a "general rule," Title III[7] of the ADA prohibits "discrimination . . . 'on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation by any person who owns, leases or operates [the] place of public accommodation.'" *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(a) (alterations omitted)). That "general rule" limits the entities that can be liable for discrimination to owners, lessors, lessees, and operators but "does not define what constitutes 'discrimination.'" *Lonberg v. Sanborn Theaters Inc.*, 259 F.3d 1029, 1032 (9th Cir. 2001). Section 12183(a) provides two non-exclusive examples of "discrimination for purposes of section 12182(a)," including (1) "a failure to design and construct facilities . . . that are readily accessible to and usable by individuals with disabilities," ("new construction standard") and (2) "a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs" ("alteration standard"). 42 U.S.C. § 12183(a).

For the purposes of this motion, the parties agree that Lewis Foods operates McDonald's, which is a "place of public accommodation," and that, seven years prior to Lewis Foods'

---

[7]  "The ADA is comprised of three parts: Title I, 42 U.S.C. § 12111 *et seq.*, which prohibits discrimination against the disabled with regard to employment; Title II, 42 U.S.C. § 12131 *et seq.*, which prohibits discrimination against the disabled by public entities; and Title III, 42 U.S.C. § 12181 *et seq.*, which prohibits discrimination against the disabled with regard to access to commercial buildings." *Lonberg v. Sanborn Theaters Inc.*, 259 F.3d 1029, 1032 (9th Cir. 2001). Only Title III is implicated here.

involvement with the premises, the premises were renovated (or, in the argot of the statute, "altered") in a way that did not comply with Section 12183(a)(2).[8] Plaintiff contends that Lewis Foods is liable for the non-complying renovation for two reasons – first, because current operators of a public accommodation are liable under the ADA for non-complying alterations made by predecessors, and second, because Lewis Foods contractually assumed liability for any predecessor's lack of compliance. Although the Court is sympathetic with Plaintiff's position, the plain text of the ADA is incompatible with her argument.

### A. Successor Liability under 42 U.S.C. § 12183(a)

At the outset, the Court notes that "'[a]s a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013) (quoting *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012)). When there is an ambiguity about the ADA's scope, its "broad remedial purpose" provides a compelling justification for an inclusive interpretation. *Castellano v. City of New York*, 142 F.3d 58, 69 (2d Cir. 1998). Although this remedial purpose requires courts to examine the statutory text through a broad lens, it is primarily relevant "[w]here the language is ambiguous." *Id.* at 67 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345 (1997)).

The Court has found four other cases in which the issue of the ADA's coverage of successor liability for non-compliant alterations or construction has been discussed. *See Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1281 (M.D. Fla. 2004); *Paulick v. Ritz-*

---

[8] As noted *supra*, as part of the renovation, a mezzanine and raised area were created, both of which are accessible only by stairs. Other aspects of the renovated facility were also not fully compliant with the ADA (*e.g.*, the height of counters and accessibility of restrooms), but lack of access to the mezzanine, raised area, and second floor are the least readily-corrected features of non-compliance.

*Carlton Hotel Co., LLC*, No. 10-CV-4107(CRB), 2011 WL 6141015, at *3-6 (N.D. Cal. Dec. 9, 2011); *Lema v. Carson Hotel, LLC*, No. 10-CV-7816(MMM), Dkt. 57, June 19, 2012 Order Granting Defendant's Motion for Summary Judgment ("*Lema*"); *Lemmons v. Ace Hardware Corp.*, No. 12-CV-3936(JST), 2014 WL 3107842, at *7-11 (N.D. Cal. July 3, 2014). The three courts that have analyzed the issue in the context of the "new construction" standard of subsection 12183(a)(1) have all held that a successor is not liable for the initial owner's failure to adhere to the ADA's requirements for new construction, whereas *Lemmons* – the only case interpreting subsection 12183(a)(2)'s alteration standard – imposed liability on the successor to the entity that made the non-complying alteration.[9]

Regardless of the policy preferences that explicitly fueled the *Lemmons* court's analysis, the plain language of the ADA does not permit the Court to draw a distinction between the two subsections and does not contemplate successor liability under either. Instead, this Court joins with the other district courts that have "construed § 12182(a) as identifying the types of individuals and entities that can be held liable under Title III of the ADA, and § 12183(a) as describing . . . conduct that give[s] rise to liability." *Lema* at 16 (citing *Paulick*, 2011 WL 6141015, at *3). The general rule of Section 12182(a) serves to prohibit discrimination in places of public accommodation "by any person who owns, leases (or leases to), or operates a place of public accommodation." Specific acts that constitute discrimination are spelled out in sections 12182(b)(2), 12183(a)(1), and 12183(a)(2). The alleged discrimination at issue in this motion is the "failure *to make* alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." 42

---

[9] A fifth district court opinion interpreting an analogous California statute interpreted it to subject current operators to liability for pre-existing noncompliant construction. *See Hodges v. El Torito Rests., Inc.*, No. 96-CV-2242(VRW), 1998 WL 95398, at *4 (N.D. Cal. Feb. 23, 1998). One additional case cited by the Plaintiff did not distinguish, for the purpose of establishing a successor's liability under the ADA, between Sections 12182(b) and 12183. *See Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 176 (S.D.N.Y. 2006).

U.S.C. § 12183(a)(2) (emphasis added).  To hold a defendant liable, of course, a plaintiff must do more than simply prove that she was subject to discrimination; she must also prove that the defendant engaged in the actionable discrimination.  Put differently, it is not enough to show that a tort occurred and that a defendant is within the class of entities that could be liable if it committed the tort.  *See, e.g., Aegis Ins. Servs. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 179 (2d Cir. 2013).  That general legal principle is no different in the ADA context.  *See Rodriguez*, 305 F. Supp. 3d at 1282 ("In regard to section 12183(a)(1) of the ADA, it is plain that that provision does not create liability that runs *in rem*.  Section 12183[] defines certain omissions (failures in the acts of design and construction [or alteration]) that constitute 'discrimination for purposes of section 12182(a).'").

     Lewis Foods is clearly an entity that can be liable under Section 12182(a), and Plaintiff clearly alleges discrimination under Section 12183(a)(2).  But Plaintiff has to connect the Defendant to the discriminatory conduct to establish that it is liable.  "[I]t is *conduct*, not identity, that gives rise to liability under § 12183(a)."  *Lema* at 17 (citing *Lonberg*, 259 F.3d at 1036) (emphasis in original).  "[A] private plaintiff may sue the owner, lessee, lessor, or operator of a non-compliant public accommodation only if the owner, lessee, lessor, or operator [] subjected . . . the plaintiff to 'discrimination,' as defined in the ADA."  *Paulick*, 2011 WL 6141015, at *5.  The statute provides that an entity subjects others to discrimination by "fail[ing] *to make* alterations in such a manner that . . . the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12183(a)(2) (emphasis added).  Lewis Foods is not alleged to have made any alteration at all, let alone one that failed to make the altered premises accessible.

Because Defendant did not engage in the activity prohibited by the statute – making a non-compliant alteration – it cannot be held liable for discrimination.[10]

De La Rosa makes a number of arguments urging the Court to interpret the statute otherwise. These arguments, however, rely on the existence of an ambiguity in the statute, and there is none. First, De La Rosa relies on regulations promulgated by the Department of Justice ("DOJ"). DOJ's regulations implementing Title III of the ADA include standards, known as the ADA Accessibility Guidelines ("ADAAG"), which purport to apply to all new construction and renovations that are subject to Title III. *See Equal Rights Ctr. v. District of Columbia*, 741 F. Supp. 2d 273, 283 n.8 (D.D.C. 2010) (citing 28 C.F.R. Pt. 36, App. A; 28 C.F.R. § 36.406). The Accessibility Guidelines that DOJ adopted in 1991 are known as the 1991 Standards; a stricter set of standards was adopted in 2010 (the "2010 Standards"). DOJ's regulations require that facilities, like the McDonald's in this case, that were altered between 1992 and March 15, 2012, and that do not comply with the 1991 Standards must, before March 15, 2012, be made accessible in accordance with either the 1991 Standards or the 2010 Standards. 28 C.F.R. § 36.406(a)(5)(i). The DOJ regulations also require that such facilities "shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards." *Id.* § 36.406(a)(5)(ii).[11]

Insofar as De La Rosa reads the DOJ regulations to mean that it is "discrimination" under 42 U.S.C. § 12182(a) to fail to remedy a predecessor's deficient alteration, such a reading is

---

[10] That is not to imply that current owners or operators of places of public accommodation are entirely off the hook for ADA compliance. Section 12182(b)(2), another provision in Title III, defines as discrimination the failure to remove barriers to access under certain circumstances, regardless of who created the barrier. *Cf. Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1082 (N.D. Cal. 2014). De La Rosa's claims against Lewis Foods pursuant to that section of the ADA remain live issues in this case.

[11] The Court affords DOJ regulations implementing Title III deference, except where they contradict the plain language of the ADA. *See, e.g.*, *Krist*, 688 F.3d at 94; *but see Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003) (citing *Olmsted v. Zimring*, 527 U.S. 581, 598 (1999) for the proposition that DOJ regulations "warrant respect" although it is unsettled whether they are entitled to deference).

"contrary to the statute" and is entitled to no weight in interpreting the plain and clear language of the ADA. *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 n.8 (2d Cir. 1997), *superseded on other grounds, Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001); *see Stryker v. S.E.C.*, 780 F.3d 163, 165 (2d Cir. 2015) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary.") (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)) (internal quotation marks and other citations omitted). Even if De La Rosa's reading of the DOJ regulations is correct, "[a] failure to comply with [28 C.F.R. § 36.406(a)(5)] does not constitute 'discrimination' under the ADA, and therefore it would not serve as a basis for Plaintiff['s] . . . discrimination claims." *Paulick*, 2011 WL 6141015, at *5 n.11 (internal citations omitted).

Next, De La Rosa alleges that the Second Circuit Court of Appeals has already addressed the issue of which defendants bear responsibility for alterations that do not comply with 42 U.S.C. § 12183(a)(2). Pl. Mem. at 19-20 (citing *Roberts v. Royal Atl. Corp.*, 542 F.3d 363 (2d Cir. 2008)). But the Circuit in *Roberts* did not purport to determine whether a subsequent owner could be liable for its predecessor's non-compliant alterations; indeed, it specifically reserved for the district court to decide in the first instance whether the named defendants were the appropriate defendants and whether there might be other necessary defendants. 542 F.3d at 379. In *Roberts*, the entities responsible for the non-complying alterations were among the defendants. *Id.* at 365. Accordingly, *Roberts* does not affect the Court's analysis of successor liability under the ADA.[12]

---

[12] In *Roberts*, the Second Circuit relied heavily on DOJ regulations to ascertain whether the construction at issue in that case constituted an "alteration," noting that "[t]he ADA does not expressly define the term 'altered.'"

9

In *Roberts* – and indeed throughout much of its ADA jurisprudence – the Second Circuit has emphasized the ADA's broad remedial purpose and has made it clear that it should not be construed narrowly. 542 F.3d at 369; *see also Mary Jo C.*, 707 F.3d at 160. Relying on the statute's broad remedial purpose, De La Rosa argues that it would run contrary to that purpose to permit entities to design, construct, or alter public accommodations without taking account of the ADA's requirements and then transfer the premises to successor entities who are beyond the purview of the ADA. Pl. Mem. at 22-23. Moreover, De La Rosa contends, Section 12183(a)'s provisions would be almost meaningless if current owners could not be held to account, because the only relief available to individual plaintiffs is injunctive relief, which presumably cannot be granted as against former owners. *See Lemmons*, 2014 WL 3107842, at *10-11; *Hodges*, 1998 WL 95398, at *4-5.

De La Rosa's policy concern is unavailing for two reasons. First, the ADA does not rely entirely on individual enforcement actions; it permits the Attorney General to bring enforcement actions as well. *Lema* at 20 (citing 42 U.S.C. § 12188(b)). Although transferring illegally-inaccessible newly-constructed or altered properties might permit an owner of a place of public accommodation to avoid a private injunctive lawsuit, the owner could nevertheless face a damages action brought by the Attorney General (who could seek a civil penalty "to vindicate the public interest," "monetary damages to persons aggrieved," or even injunctive relief – perhaps including reimbursement to the successor owner for the costs of repairs necessary to rectify fully the prior owner's noncompliance). 42 U.S.C. § 12188(b)(2)(A)-(C). "Consequently, it is untrue that an entity such as a shopping mall or hotel developer that constructs and immediately sells a property would be free of liability in all circumstances."

---

542 F.3d at 369. Resorting to agency interpretations in that context does not suggest that it is appropriate to do so in determining whether a defendant's conduct constitutes "discrimination," which the ADA does define.


*Lema* at 20.  The possibility of a public enforcement action should ensure that no entity willfully ignores the ADA's requirements based on its belief that it can discriminate with impunity.  Moreover, even if the possibility of a public enforcement action does not address all of De La Rosa's policy concerns, "given the relative clarity of the statutory text," the Court may not second-guess whether Congress's choice of policies will yield the outcome that it might have hoped.  *Id*.

While the Court is sympathetic with De La Rosa's position – after all, at least for the purposes of evaluating this motion, De La Rosa is a victim of discrimination at the Times Square McDonald's – the Court is also constrained by the text of the remedial scheme that Congress crafted.  The Government may bring an action against the entity or entities that altered the premises, and De La Rosa may sue Lewis Foods (as she has) to require it to make "readily achievable" improvements to eliminate barriers to access.  But under the statute that Congress passed, the broad requirement that a place of public accommodation must eliminate barriers to access *irrespective of cost* applies only when that entity played a role in the creation (or alteration without remediation) of the facility with the access barrier (or assumed the liability from an entity that did).  In this case, Lewis Foods did not play a role in the noncomplying renovation of the McDonald's; accordingly, it cannot be held liable by virtue of its role as the current "operator" of the premises.

### B. Contractual Assumption of Liability for Prior Deficient Alterations

De La Rosa next argues that, even if Lewis Foods cannot be held liable because it did not make the noncompliant alteration, it contractually assumed liability from McDonald's USA, LLC when it entered into the Franchise Agreement.  Pl. Mem. at 14-16.  The Franchise Agreement requires Lewis Foods to maintain the restaurant according to the blueprints and initial layout plans and obliges Lewis Foods "to comply with all federal, state, and local laws,

ordinances, and regulations affecting the operation of the Restaurant." Def. Stip. ¶¶ 3, 5.[13]

Because relevant federal regulations require that the restaurant be "readily accessible," De La Rosa argues, the Franchise Agreement requires Lewis Foods to make the necessary changes to the premises to bring it into conformity with the AGAAG. *See* 28 C.F.R. § 36.406(a)(5)(i)-(ii).

Even if De La Rosa were correct, her argument would prove only that Lewis Foods has breached the Franchise Agreement. De La Rosa does not allege a cause of action for breach of contract (nor could she). Breaching the Franchise Agreement is not discrimination, and nothing within the Franchise Agreement makes Lewis Foods accountable for its predecessors' noncompliant renovation. *Cf. Paulick*, 2011 WL 6141015, at *6-7.

If the Franchise Agreement provided that Lewis Foods assumed McDonald's USA, LLC's liability for any prior failures to comply with the ADA, and if McDonald's USA, LLC was the entity responsible for the renovation that is non-compliant, and if De La Rosa had standing to sue under the contract, then Lewis Foods might be liable for the noncompliant alteration made by its predecessor. But language requiring Lewis Foods to comply with federal laws and regulations moving forward does not render Lewis Foods liable for a violation of the ADA that occurred at the time of the noncomplying renovation, well before its involvement at the premises. Although not remedying the prior noncompliant alteration might violate DOJ's regulations, in order to violate the statute's alterations requirements, 42 U.S.C. § 12183(a)(2), one must "make alterations" that leave the altered portions of the facility not readily accessible to individuals with disabilities. The Franchise Agreement does not confer liability for already-

---

[13] The Court has not considered any section of the Franchise Agreement beyond those contained in the Defendant's Stipulation of Facts. Dkt. 142. Although Plaintiff argues that Defendant has put the entire Franchise Agreement at issue by referring to it, *see* Parker Letter of August 11, 2015, Dkt. 149, the Court understands Defendant's argument to be premised upon the references to the Franchise Agreement contained in the Stipulation, which describes the only portions of the Agreement reviewed by the Court in the context of this motion.

completed alterations that fail to comply with the ADA; accordingly, it does not provide a basis for De La Rosa's cause of action against Lewis Foods.

## II.     The Statute of Limitations

Because Lewis Foods is not liable for discrimination that it did not commit and for which it has otherwise not assumed responsibility, Defendant's alternative basis to dismiss, that Plaintiff's claim is barred by the statute of limitations, is moot.  Nevertheless, because the law is still unsettled as to the date of accrual for statute of limitations purposes in actions under 42 U.S.C. § 12183(a), it is worth briefly discussing the rules proposed by the parties.[14]  Although "state law determines the statute[] of limitations . . . , federal law determines when the claims accrue." *Gardner v. Wansart*, No. 05-CV-3351(SHS), 2006 WL 2742043, at *5 (S.D.N.Y. Sept. 26, 2006).  There is not a clear consensus as to when a claim under the ADA's new construction or alteration provision accrues or how the statute of limitations should apply.

Defendant proposes that the Court apply either the "construction rule" or the "discovery rule" (also called the "encounter rule") to determine the date on which a plaintiff's claim for a discriminatory alteration (or discriminatory construction) accrued.  *See* Def. Mem. at 4-6.  Under the "construction rule," "claims accrue[] 'upon the completion of alterations.'" *Disabled in Action of Penn. v. SE. Penn. Transp. Auth.*, 539 F.3d 199, 217 (3d Cir. 2008) (interpreting Title II of the ADA and quoting 42 U.S.C. § 12147(a)) (alteration omitted).  This rule "provides a clear level of repose for defendants."  Eve L. Hill & Peter Blanck, *Future of Disability Rights: Part Three: Statutes of Limitations in Americans with Disabilities Act "Design and Construction*

---

[14]     Under any rule, the ADA's statute of limitations is three years.  *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) ("The ADA does not contain a specific statute of limitations, and thus the most appropriate state limitations period applies.  Because [an ADA Title III] claim is most closely related to a personal injury action," courts look to state personal injury statutes of limitations.) (internal quotation marks omitted); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (same); *see* N.Y. C.P.L.R. § 214; *Yepez v. 44 Court St. LLC*, 994 F. Supp. 2d 333, 335 (E.D.N.Y. 2014) (applying New York's three-year statute of limitations to a claim pursuant to 42 U.S.C. § 12183(b)).

*Cases"*, 60 SYRACUSE L. REV. 125, 140 (2009).  Under the "discovery rule," "accrual occurs 'the moment the plaintiff becomes aware that [s]he has suffered an injury or has sufficient information to know that [s]he has been injured.'"  *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) (*en banc*) (also in Title II context, quoting *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)).  The "discovery rule" is seen as more plaintiff-friendly in that it does not "prevent[] blameless plaintiffs from enforcing their rights because they did not encounter the violation until after the limitations period had passed," Hill & Blanck, *supra* at 140; operators of places of public accommodation, however, would never have the benefit of a statute of repose for non-compliant construction or alterations, as they could be haled into court decades later for non-compliant construction.  The Court would therefore be inclined to adopt the construction rule.[15]

Plaintiff argues that the precise date of accrual of the claims is irrelevant because ADA Title III violations are "continuing violations," and, as a result, the statute of limitations (regardless of the date of accrual) cannot bar a lawsuit.  Pl. Mem. at 1-13.  Under some circumstances, that is a correct characterization of the law.  *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075-76 (7th Cir. 2013); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002); *Eames v. S. Univ. & Agric. & Mech. Coll.*, No. 09-CV-56(JJB), 2009 WL 3379070, at *3 (M.D. La. Oct. 16, 2009).  But ADA violations are more clearly "continuing" in the context of Section 12182(b)(2)(A), which provides that discrimination is ongoing as long as an operator of a place of public accommodation is not taking steps that are readily achievable to eliminate specified categories of barriers to access.  A failure to do so is an act of discrimination

---

[15] This decision, unlike the question of whether the "continuing violation" doctrine applies, does not affect the application of the statute of limitations to this case – under either the construction rule or the discovery rule, De La Rosa's claim would be barred.  Def. Mem. Ex. A; De La Rosa Dep. at 94-95.

– and such act is committed every day that the readily achievable change is not made. On the other hand, Section 12183(a)(2) provides that altering a facility without making it "readily accessible" is discrimination; that act of discrimination is complete when the noncomplying alteration is complete. Accordingly, the line of cases on which Plaintiff relies is not dispositive of whether courts should apply a continuing violation theory in the context of a noncomplying alteration.[16]

If a successor operator were liable for noncomplying alterations made by its predecessor, the Court would view noncompliance with the alteration provision of the ADA as a one-time discriminatory act, complete when the predecessor completed the alteration that failed to make "the altered portions of the facility . . . readily accessible." 42 U.S.C. § 12183(a)(2). Accordingly, a claim under Title III would not be subject to the continuing violation doctrine. In that circumstance, De La Rosa's claim pursuant to section 12183(a)(2) would be barred by the statute of limitations under either the construction rule or the discovery rule.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's claims pursuant to 42 U.S.C. § 12183(a)(2) is GRANTED. Defendants' motions *in limine* to exclude testimony of Steve Elghanayan and to exclude documents allegedly from the Department of Buildings are dismissed without prejudice to renewal if the basis for the motions is not resolved by the Court's Opinion. The Clerk of the Court is respectfully directed to terminate docket entries 113, 115, and 137. The parties are directed to appear for a status conference on August 28, 2015, at 10:00

---

[16] In the Title II context, courts have been willing to apply a continuing violation theory where a municipality engages in a multi-stage construction project in which the construction is inaccessible at each stage. *See, e.g., Deck v. City of Toledo*, 56 F. Supp. 2d 886, 892-95 (N.D. Ohio 1999). Nothing suggests that a one-time alteration in the Title III context should be subject to the same rule.

a.m., in Courtroom 443 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007.

**SO ORDERED.**

Date:  August 13, 2015            **VALERIE CAPRONI**
       New York, NY                **United States District Judge**